IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KELLY PINN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GREENSTAR POWER LLC AND JOHN DOE LEAD GENERATOR IDENTIFIED AS ZEN ENERGY<br><br><br>Defendants. | Case No. 1:24-cv-00066<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Kelly Pinn ("Ms. Pinn"), by her undersigned counsel, for this class action complaint against Defendants Greenstar Power LLC and John Doe Lead Generator Identified As Zen Energy, as well as their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.   INTRODUCTION

1. <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between

'[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.   PARTIES

5. Plaintiff Pinn is an individual who resides in the Northern District of Texas.

6. Defendant Greenstar Power LLC is a Texas solar panel sales and installation company with its headquarters and principal place of business in Round Rock.

7. Defendant John Doe Lead Generator Identified As Zen Energy is an as-yet unidentified lead generator Greenstar Power LLC hired to make illegal telemarketing calls and generate leads on its behalf.

## III.   JURISDICTION AND VENUE

8. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violation of the Texas Business and Commerce Code relates to the same telemarketing campaign as the TCPA claim.

9. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Court has general personal jurisdiction over Defendant Greenstar Power LLC because it is a Texas Corporation. The Court has specific personal jurisdiction over John Doe Lead Generator Identified As Zen Energy because it contracted with Greenstar, a Texas corporation, to place the illegal telemarketing calls nationwide, including into Texas.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was orchestrated from this District.

## IV.   FACTS

### A.   The Enactment of the TCPA and its Regulations

11.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.   Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13.   The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14.   A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15.   The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     The Texas Business and Commerce Code**

16.     Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," which includes "a service" to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

17.     The burden of proof lies on a defendant to show it registered each business location to prove its licensure or on proving an exemption. *Id.* § 302.051.

18.     Solar panels and their associated installation services are "items" for which there is no exemption to the Code. *Id.* § 302.051.

19.     None of the Defendants are registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying Defendant Green Star or Greenstar as either a DBA or seller name returns no results)

**C.     Unsolicited Telemarketing to Plaintiff**

20.     Plaintiff Pinn is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21.     Plaintiff's residential telephone number is (817)-903-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

22.     Ms. Pinn uses the number for personal, residential, and household reasons.

23.     Plaintiff Pinn never consented to receive calls from Defendants.

24.     Plaintiff Pinn never did business with any of the Defendants.

25. Despite this, Plaintiff received multiple automated calls and text messages from Defendants as part of a telemarketing campaign, between May 4, 2023 and January 8, 2024. The calls were all sent from a call center identifying themselves variously as "RealInc Energy," "United Energy Company," "Solar Energy Solutions," "Brand Solar" or some variation thereof and all used identical or nearly identical scripts or were placed by Defendant Greenstar or its agents directly.

26. Upon information and belief, all these fictious entities described above are aliases for the John Doe entity identified as "Zen Energy"

27. The first call from Defendants came on May 4, 2023 at 1:22 PM from the caller ID 215-583-0164. During that call, the caller stated that they were calling from "RealInc Energy" and were calling to sell the Plaintiff solar panels.

28. Because the Plaintiff wanted to uncover and track the identity of the caller and for no other reason, the Plaintiff provided a unique name of "Trinity Bland" on the call and stated that her address was "1001 Prairie Heights."

29. That same day, the Plaintiff received three calls from the caller IDs 254-272-8329, 480-879-1319, and 330-316-3791 for individuals all following up on the solar quote from RealInc Energy. In the final call and text messages, from 330-316-3791, Plaintiff received communication from an individual named "Eddie" who confirmed that he worked for a lead generator called "Zen Energy Company" who Defendant Greenstar hired to make the calls. "Eddie" also provided Defendant Greenstar's website to Plaintiff.

30. Thereafter, on May 19, 2023, the Plaintiff received an email from Defendant's attorney, Troy Voelker, in response to Plaintiff's inquiry to Greenstar as to why she was receiving illegal calls and her request that Greenstar refrain from contacting her in the future.

31. Unsurprisingly, the calls continued. Specifically, the Plaintiff received a call on September 26, 2023 at 4:39 PM from the caller ID 717-685-6966. The caller was "Jason" who stated that he was calling from "United Energy Company" and was looking to sell the Plaintiff solar panels. In response, the Plaintiff stated that she was not interested and not to call back.

32. Plaintiff retained the undersigned counsel in October of 2023, who sent correspondence to Troy Voelker.

33. The calls continued. On December 19, 2023 at 1:24 PM, Plaintiff received a call from 623-233-4976 from another individual who claimed to be from "United Energy Company." This individual stated that he was looking for "Trinity" and was calling to sell the Plaintiff solar panels. This individual also stated that someone would call her the following day, but the Plaintiff did not state that she consented to the same.

34. Despite this, on December 20, 2023 at 11:46 AM, the Plaintiff received a missed call from the caller ID 213-359-1276.

35. On December 20, 2023 at 11:46 AM, the Plaintiff received multiple text messages from "Austin" looking for "Michelle" who stated that his "agent" spoke yesterday with the Plaintiff and wanted to schedule a Zoom meeting with an employee of Defendant Greenstar.

36. On December 20, 2023 at 2:57 PM, the Plaintiff received a call from Scott Roger at Defendant Greenstar from the caller ID 432-559-9466 pertaining to the Zoom meeting. Scott Roger tried to sell the Plaintiff solar panels, but the Plaintiff indicated that she was not interested, as Plaintiff had identified the caller. Shortly thereafter, at 3:11 PM, the Plaintiff received a text message from this number with Scott Roger's email address, scott.roger@greenstarpower.com.

37. Greenstarpower.com is the website for Defendant Greenstar. Indeed, counsel for Plaintiff sent an email to this email address and it did not bounce back.

38.     Thereafter, on December 20, 2023 at 5:36 PM, 5:37 PM, and 5:48 PM, Plaintiff received calls from agents who claimed they were with "Solar Energy Solutions" and "Brand Solar" who were calling to "follow up" and wanted to know if Plaintiff had spoken with Greenstar. These agents, who were from the John Doe call center identified as Zen Energy, were calling because, on information and belief, Greenstar hired Zen to conduct telemarketing for them on a commission and/or per call/per transfer basis.

39.     The calls nevertheless continued. On January 8, 2024, at 2:34 PM and again at 2:36 PM from 801-449-0225. The caller stated that she was "Ann" from "Brand Solar" who was "Partnered with Greenstar Power." The caller stated that she was looking for "Michelle" and stated that Plaintiff spoke with a solar expert at Greenstar previously and wanted to know if the Plaintiff was still interested. The Plaintiff stated that she was not interested and to remove the Plaintiff from their list.

40.     None of the aforementioned Defendants are registered as telephone solicitors with the Texas Secretary of State.

41.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

42.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

43.     The FCC has instructed that sellers such as Greenstar may not avoid liability by outsourcing telemarketing to third parties, such as Zen:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective

8

remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

44. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

45. Greenstar is liable for telemarketing calls placed by Zen and transferred to Greenstar to generate customers for Greenstar, including the Plaintiff.

46. Greenstar was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

47. To do so, it hired Zen to orchestrate an *en masse* telemarketing campaign.

48. Greenstar controlled the day-to-day activities of Zen by providing the specific criteria for the leads it would accept and required its vendors, including Zen, to adhere to those criteria.

49. For example, the calls Plaintiff receive demonstrate that Greenstar required Zen to contact the customer to confirm the transfer after Greenstar had contacted the customer as a requirement that Zen receive its commission, despite Greenstar knowing that it was to have no

contact with Plaintiff, who had already indicated to counsel for Greenstar that she was being represented by counsel with respect to the exact illegal conduct described herein.

50. Greenstar would not compensate Zen for a call it made unless the leads it purchased met the criteria and the customer confirmed to Zen that Greenstar had contacted them to eliminate needing to pay for so-called "tire kickers."

51. As such, Greenstar controlled the content of Zen's telemarketing.

52. It also could and should have communicated Plainitff's multiple requests not to be called to Zen.

53. Finally, Greenstar could have terminated Zen.

54. It did not.

55. By virtue of identifying the leads that they would accept, Greenstar directed the content of the communications that Zen would use in their calling.

56. A reasonable seller whose telemarketers are making calls would investigate into the reasons why they would be calling numbers on the National Do Not Call Registry and, moreover, individuals who already stated that they believed that Greenstar and Zen were breaking the law and were represented by counsel.

57. Indeed, Greenstar could have investigated if the transfers it received were on the National Do Not Call Registry.

58. It did not.

59. Greenstar hired Zen without a proper investigation and did not terminate them when they were informed of Zen's illegal calling conduct.

60. As such, they knowingly ratified Zen's conduct.

61. Greenstar also ratified Zen's conduct because, with knowledge of Plaintiff's complaints against Greenstar, they accepted the Plaintiff's lead.

62. Greenstar accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her.

63. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

64. Plaintiff's privacy has been violated by the above-described telemarketing calls.

65. Plaintiff never provided her consent or requested these calls.

66. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, while in the hospital, and performing other critical tasks.

### V.   CLASS ACTION ALLEGATIONS

67. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Zen or Greenstar, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Texas Business and Commerce Code Class**: All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Zen or Greenstar, (2) at any time during which Zen or Greenstar were not registered as telephone solicitors with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

68. Excluded from the Classes are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

69. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

70. The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

71. Individual joinder of these persons is impracticable.

72. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

73. Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

74. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

75. This class action complaint seeks injunctive relief and money damages.

76. There are numerous questions of law and fact common to Plaintiffs and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

      a.      Whether Greenstar is vicariously liable for the actions of Zen, and the corresponding liability as between them;

      b.      the true identity of Zen;

      c.      whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

      d.      whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

      e.      whether Defendants made telephone solicitations to members of the Texas Business and Commerce Code class without the required registration; and

      f.      whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

77.    Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

78.    Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the Classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

79.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendants and/or their agents.

80. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

81. Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

82. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

83. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

84. Defendants' violations were negligent, willful, or knowing.

85. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

86. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**
**Texas Business and Commerce Code**
**Violations of Texas Business and Commerce Code § 302.101**
**(On Behalf of Plaintiff and the Texas Business and Commerce Code Class)**

87. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

88. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class

despite not holding a registration certificate for the business location from which the telephone solicitation is made.

89. Defendants' violations were negligent, willful, or knowing.

90. As a result of Defendants', and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Classes of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.     DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this January 22, 2024.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.
>Perrong Law LLC
>2657 Mount Carmel Avenue
>Glenside, Pennsylvania 19038
>Phone: 215-225-5529 (CALL-LAW)
>Facsimile: 888-329-0305
>a@perronglaw.com
>
>*/s/ Anthony Paronich*
>Anthony Paronich
>Email:  anthony@paronichlaw.com
>PARONICH LAW, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>Telephone:  (617) 485-0018
>Facsimile:  (508) 318-8100
>
>
>*Attorneys for Plaintiff and the Proposed Class*