**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| KELLY PINN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br><br>BRND BLDRS, LLC<br>F/I/A JOHN DOE LEAD GENERATOR IDENTIFIED AS ZEN ENERGY<br><br>AND<br><br>JARED BOLDUC<br>　　　　　　　　　　Defendants. | Case No.<br>1:24-CV-00066<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Kelly Pinn ("Ms. Pinn"), by her undersigned counsel, for this class action complaint against Defendants BRND Bldrs, LLC, formerly identified as John Doe Lead Generator Identified as Zen Energy, and its owner Jared Bolduc, as well as their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

**I.　INTRODUCTION**

1.　Nature of Action: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to

their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4.	Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.	PARTIES

5. Plaintiff Pinn is an individual who resides in the Northern District of Texas.

6. Defendant Brnd Bldrs LLC is a lead generation company located in Utah hired by the former defendant in this matter, Greenstar Power LLC, to make illegal telemarketing calls and generate leads on Greenstar's behalf.

7. Defendant Jared Bolduc is the owner of Brnd and upon information and belief is a resident of Utah.

## III.	JURISDICTION AND VENUE

8. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violation of the Texas Business and Commerce Code relates to the same telemarketing campaign as the TCPA claim.

9. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Court has specific personal jurisdiction over Brnd and Bolduc because they contracted with Greenstar, a Texas corporation, to place the illegal telemarketing calls nationwide, including into Texas, thus directing their harm into Texas.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was orchestrated from this District.

## IV.   FACTS

### A.   The Enactment of the TCPA and its Regulations

11.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.   Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13.   The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14.   A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15.   The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     The Texas Business and Commerce Code**

16.     Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," which includes "a service" to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

17.     The burden of proof lies on a defendant to show it registered each business location to prove its licensure or on proving an exemption. *Id*. § 302.051.

18.     Solar panels and their associated installation services are "items" for which there is no exemption to the Code. *Id*. § 302.051.

19.     None of the Defendants are registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying Defendant Brnd or Bolduc as either a DBA or seller name returns no results)

**C.     Unsolicited Telemarketing to Plaintiff**

20.     Plaintiff Pinn is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21.     Plaintiff's residential telephone number is (817)-903-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

22.     Ms. Pinn uses the number for personal, residential, and household reasons.

23.     Plaintiff Pinn never consented to receive calls from Defendants.

24.     Plaintiff Pinn never did business with any of the Defendants.

25. Despite this, Plaintiff received multiple automated calls and text messages from Defendants as part of a telemarketing campaign, between May 4, 2023 and February 9, 2024, after this matter was initiated. The calls were all sent from Defendants' call centre, which identifying themselves using fake names variously as "RealInc Energy," "United Energy Company," "Solar Energy Solutions," "Brand Solar," "American Solar" or some variation thereof and all used identical or nearly identical scripts or were placed by Defendants directly.

26. Upon information and belief, all these fictious entities described above are aliases for Defendants Brnd and Bolduc.

27. Indeed, discovery propounded in this matter upon the former Defendant, Greenstar Solar, revealed that it hired Brnd and Bolduc to make the calls at issue using such fake names and aliases, which Brnd and Bolduc placed directly, subjecting them to direct liability under the TCPA.

28. The first call from Defendants came on May 4, 2023 at 1:22 PM from the caller ID 215-583-0164. During that call, the caller stated that they were calling from "RealInc Energy" and were calling to sell the Plaintiff solar panels.

29. Because the Plaintiff wanted to uncover and track the identity of the caller and for no other reason, the Plaintiff provided a unique name of "Trinity Bland" on the call and stated that her address was "1001 Prairie Heights."

30. That same day, the Plaintiff received three calls from the caller IDs 254-272-8329, 480-879-1319, and 330-316-3791 for individuals all following up on the solar quote from RealInc Energy. In the final call and text messages, from 330-316-3791, Plaintiff received communication from an individual named "Eddie" who confirmed that he worked for a lead generator called "Zen Energy Company" who former Defendant Greenstar hired to make the

calls. "Eddie" also provided former Defendant Greenstar's website to Plaintiff. "Zen Energy Company" is yet another alias used by defendant Brnd.

31. Thereafter, on May 19, 2023, Greenstar forwarded or should have forwarded a request for Defendants not to contact Plaintiff to the Defendants.

32. Unsurprisingly, the calls from the Defendants continued. Specifically, the Plaintiff received a call on September 26, 2023 at 4:39 PM from the caller ID 717-685-6966. The caller was "Jason" who stated that he was calling from "United Energy Company" and was looking to sell the Plaintiff solar panels. In response, the Plaintiff stated that she was not interested and not to call back.

33. The calls continued. On December 19, 2023 at 1:24 PM, Plaintiff received a call from 623-233-4976 from another individual who claimed to be from "United Energy Company." This individual stated that he was looking for "Trinity" and was calling to sell the Plaintiff solar panels. This individual also stated that someone would call her the following day, but the Plaintiff did not state that she consented to the same.

34. Despite this, on December 20, 2023 at 11:46 AM, the Plaintiff received a missed call from the caller ID 213-359-1276.

35. On December 20, 2023 at 11:46 AM, the Plaintiff received multiple text messages from "Austin" looking for "Michelle" who stated that his "agent" spoke yesterday with the Plaintiff and wanted to schedule a Zoom meeting with an employee of fromer Defendant Greenstar. This text message was, too, sent by Defendant Brnd using aliases and obfuscation to conceal its identity.

36. Thereafter, on December 20, 2023 at 5:36 PM, 5:37 PM, and 5:48 PM, Plaintiff received calls from agents who claimed they were with "Solar Energy Solutions" and "Brand

Solar" who were calling to "follow up" and wanted to know if Plaintiff had spoken with Greenstar. These agents, who were from Defendant Brnd, were calling because Greenstar hired Brnd to conduct telemarketing for them on a commission and/or per call/per transfer basis and would only get paid if the Plaintiff confirmed the appointment.

37. The calls nevertheless continued. On January 8, 2024, at 2:34 PM and again at 2:36 PM from 801-449-0225. The caller stated that she was "Ann" from "Brand Solar," which is clearly an alias for the Defendant Brnd, who was "Partnered with Greenstar Power." The caller stated that she was looking for "Michelle" and stated that Plaintiff spoke with a solar expert at Greenstar previously and wanted to know if the Plaintiff was still interested. The Plaintiff stated that she was not interested and to remove the Plaintiff from their list.

38. The calls from Brnd and Bolduc continued during the pendency of this litigation.

39. Specifically, Plaintiff received two calls from AI robots identifying themselves as calling with "American Solar" on February 5, 2024.

40. Plaintiff also received a call from another AI robot identifying itself as calling from "American Solar" on February 8, 2024. As a result of this call, the Plaintiff received a confirmation and statement that she would receive a call from a solar company the following day.

41. Thereafter, on February 9, 2024, the Plaintiff received a call from Lewis Duff with Electric Distribution and Design Systems. When the Plaintiff contacted EDDS, its owner, Thomas Edds, stated that he, like Greenstar, hired Defendants to place calls on their behalf. The Defendants are therefore linked to the calls Plaintiff received on February 5 and 8.

42. In April and May, Defendant Bolduc personally communicated with Plaintiff, whom he knew or should have known was represented by counsel, in an attempt to get her to

settle her claims against Defendants Brnd and Bolduc for $500, and wrongfully denying liability for the calls at issue, despite knowing full well that Greenstar had identified Brnd as the entity it hired to place the calls.

43. Defendant Bolduc was therefore personally responsible for Brnd's TCPA compliance efforts, which included the Plaintiff's number and in attempting to settle the Plaintiff's claims against them despite knowing that she was represented.

44. Defendant Bolduc may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

45. Bolduc personally directed the TCPA-violative conduct at issue because he personally directed the scheme of obfuscation to hide his responsibility for the calls at issue. Moreover, he was the individual who was responsible for the day-to-day calling conduct, operations, and interactions with the solar companies like Greenstar who hired him and his company to promote their services, as well as was the individual who ultimately took responsibility for TCPA compliance efforts, including by personally attempting to get a represented Plaintiff to settle her claims against him and his company for $500.

46. Bolduc was also the individual responsible for drafting, setting, implementing, and controlling Brnd's marketing strategy, including the use of illegal automated prerecorded calls, illegal AI calls, illegal calls to numbers on the National Do Not Call Registry, and the

illegal scripting which used fake names for such calls, as well as its strategy of obsfucating corporate identity which necessitated discovery from Greenstar.

47. The foregoing facts demonstrate that Bolduc had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

48. None of the aforementioned Defendants are registered as telephone solicitors with the Texas Secretary of State.

49. Plaintiff's privacy has been violated by the above-described telemarketing calls.

50. Plaintiff never provided her consent or requested these calls.

51. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, while in the hospital, and performing other critical tasks.

## V. CLASS ACTION ALLEGATIONS

52. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Texas Business and Commerce Code Class**: All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Defendants, (2) at any time during which Defendants were not registered as telephone solicitors with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

53.     Excluded from the Classes are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

54.     The Classes, as defined above, are identifiable through telephone records and telephone number databases.

55.     The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

56.     Individual joinder of these persons is impracticable.

57.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

58.     Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

59.     Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

60.     This class action complaint seeks injunctive relief and money damages.

61.     There are numerous questions of law and fact common to Plaintiffs and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

    a.      whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

        b.      whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

        c.      whether Defendants made telephone solicitations to members of the Texas Business and Commerce Code class without the required registration; and

        d.      whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

62. Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

63. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the Classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

64. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

65. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for

violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

66. Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

67. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

68. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

69. Defendants' violations were negligent, willful, or knowing.

70. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

71. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

### SECOND CAUSE OF ACTION
**Texas Business and Commerce Code**
**Violations of Texas Business and Commerce Code § 302.101**
**(On Behalf of Plaintiff and the Texas Business and Commerce Code Class)**

72. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

73. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

74. Defendants' violations were negligent, willful, or knowing.

75. As a result of Defendants', and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are

presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

    A.    Certification of the proposed Classes;

    B.    Appointment of Plaintiff as representative of the Classes;

    C.    Appointment of the undersigned counsel as counsel for the Classes;

    D.    An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

    E.    An award to Plaintiff and the Classes of damages, as allowed by law; and

    F.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.    DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this August 7, 2024.

                */s/ Andrew Roman Perrong*
                Andrew Roman Perrong, Esq.
                Perrong Law LLC
                2657 Mount Carmel Avenue
                Glenside, Pennsylvania 19038
                Phone: 215-225-5529 (CALL-LAW)
                Facsimile: 888-329-0305
                a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*